UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WAYNE STEVENSON, GAYLE STEVENSON,
LARRY HOLZMILLER, JUDITH HOLZMILLER,
RANDALL JACOBSEN, MARGARET C. JACOBSEN,
RONALD LONSCAR,
JAMES L. MANTZ, DIANE L. MANTZ,
DAN SHILLINGLAW, MARGARET R. SHILLINGLAW,
DOUGLAS TETTING,
TERRENCE P. VOGL, JEAN VOGL,
JEFFREY J. WEIDE, MARY LINDA WEIDE,
ROGERS WILLMS, LINDA T. WILLMS,
EUGENE ZIAREK, and ELIEEN ZIAREK,

                Plaintiffs,

v.                                                  Case No. 02-C-530

MILWAUKEE FORGE and
MILWAUKEE FORGE HEALTH PLAN,

                Defendants.

## DECISION AND ORDER

In the wake of the August 17, 2006, Decision and Order in this Employee Retirement Insurance Security Act ("ERISA") action setting forth the Court's findings of fact and conclusions of law based on the bench trial, the Plaintiffs, former employees of the Defendant Milwaukee Forge ("Milwaukee Forge") and some of those employees' spouses, filed three motions: (1) a motion to increase the damage award to reflect premium payments made since trial (Docket No. 123), (2) a motion for attorneys' fees and taxable costs (Docket

No. 124), and (3) a motion for sanctions (Docket No. 134). The motions are ready for resolution and are now addressed.

*Motion to Increase Damage Award to Reflect Premium Payments*
*Made Since Trial*

The Plaintiffs move the Court for an order increasing the damage award to reflect the healthcare insurance premium payments that they made to Milwaukee Forge between the end of the trial and the issuance of trial decision. The Plaintiffs rely on the Court's August 17, 2006, Decision and Order asserting that it contemplates an award of additional premium payments that Milwaukee Forge is required to pay following the trial.

The Defendants oppose the motion asserting that the record in this matter has been closed since March 2004 and the Court did not invite the Plaintiffs to submit a claim for any additional damages. They assert that the Plaintiffs made a strategic decision and that, as a matter of law, the resultant waiver cannot be placed on Milwaukee Forge's "lap." (Defs.' Resp. Pls.' Mot. Increase Damage Award 4.) Further, the Defendants challenge the damages sought by Plaintiffs James L. and Diane L. Mantz (collectively the "Mantzes"). The Defendants maintain that, to the extent that the Court allows the increased damage award, the proof submitted by the Plaintiffs should be stricken because it is not based upon personal knowledge and belief.

The Plaintiffs counter that Rule 60(a) and (b)(6) of the Federal Rules of Civil Procedure provide authority for the requested amendment of the judgment. They state that the Mantzes are not seeking damages incurred prior to trial; rather, they believe that they are

2

entitled to be placed in the same position as if the Court rendered its decision at the trial's terminus.

Rule 60 of the Federal Rules of Civil Procedure regulates the procedures for obtaining relief from final judgments. *Wesco Prods. Co. v. Alloy Auto. Co.*, 880 F.2d 981, 983 (7th Cir. 1989). The movant bears the burden in requesting Rule 60 relief. *See, e.g., Money Store, Inc. v. Harriscorp Fin., Inc.*, 885 F.2d 369, 372 (7th Cir. 1989). The provision is divided into two sections. *Wesco*, 880 F.2d at 983. Relief from final judgment "infected" by clerical error is provided for by Rule 60(a). *Id*. Five clauses delineating specific grounds for obtaining relief are set forth in Rule 60(b), as well as a catchall clause in Rule 60(b)(6). *Id*.

Inherent in the structure of Rule 60(b) is the principle that the first three clauses and the catchall clause are mutually exclusive.[1] *Id*. Stated somewhat differently, if the asserted grounds for relief fall within the terms of the first three clauses of Rule 60(b), relief under the catchall provision is not available. *Id*. The rationale underlying this principle is that the one year time limit applicable to the first three clauses of Rule 60(b) would be meaningless if relief was also available under the catchall provision. *Id*.

Motions to correct clerical errors seeking changes that "implement the result intended by the court at the time the order was entered" are proper under Rule 60(a). *Id*. at 984. However, another avenue must be used if the motion seeks changes that "alter the original legal meaning to correct a legal or factual error." *Id*.

---

[1] *Wesco* highlights that motions alleging grounds for relief delineated in the first three clauses of Rule 60(b) must be brought within one year after the entry of the final judgment; whereas, motions brought under the last three clauses are not subject to an express time limitation but must only be filed within a reasonable time of the entry of judgment. *Id*.

Rule 60(b)(1) permits the Court to provide relief from an order on the grounds of mistake, inadvertence, or excusable neglect.  Rule 60(b)(6) states that the Court may afford relief for "any other reason justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b).  A motion under this subsection is addressed to the sound discretion of the Court. *See* Fed. R. Civ. P. 60(b)(6).

The Court's Decision and Order "enjoined and barred" Defendants Milwaukee Forge and Milwaukee Forge Health Plan (collectively the "Defendants") "from requiring the plaintiffs to pay any portion of the premiums for the group hospital, surgical, and dental insurance sponsored by the defendants for the plaintiffs, and . . . required [Milwaukee Forge] to continue to pay the entirety of the premium payments for the group hospital, surgical, and dental insurance sponsored by the defendants for the plaintiffs until each plaintiff becomes eligible for Medicare."  (Decision and Order at 50 (Aug. 17, 2006).)  The Decision and Order also awarded specific damage amounts based on past premium payments made by the Plaintiffs – those amounts were based on evidence presented at trial.  (*Id.* at 48-50.)

In contending that the Plaintiffs may not obtain relief by means of a post-trial motion, the Defendants rely on *RKI, Inc. v. Grimes*, 200 F.Supp. 2d 916, 921 (N.D. Ill. 2002). As the decision of a parallel district court, *RKI* is not binding precedent.

More importantly, the circumstances of *RKI* are distinguishable.  The *RKI* defendants rested their case without presenting any evidence.  *Id.*  Despite the trial court's articulation of concerns regarding the defense strategy and a subsequent recess enabling defense counsel to revisit that strategy with his clients, the defendants reaffirmed their decision

4

to rest without presenting evidence. *Id.* Thereafter, the defendants brought a post-trial motion requesting leave to introduce evidence that had been available to them at the time of the trial. *Id.*

Unlike *RKI*, evidence of the Plaintiffs' post-trial premium payments did not exist when the case was tried. The Plaintiffs were also vigorous in presenting and proving their ERISA claim.

By invoking Rule 60(a), the Plaintiffs want to reopen the record for the limited purpose of introducing evidence of damages which they sustained between the close of trial and the issuance of the Court's favorable bench trial decision. The clerk's entry of the judgment without including those damages for which the Plaintiffs produced no evidence at trial cannot be deemed a clerical error within the scope of Rule 60(a). *See Buggs v. Elgin, Joliet & E. Ry. Co.*, 852 F.2d 318, 322 (7th Cir. 1988). Therefore, Rule 60(a) does not provide an avenue for the requested relief.

The Plaintiffs also rely on the catch-all provision of Rule 60(b)(6) as a basis for relief. However, that provision is unavailable when some other portion of Rule 60(b) is at issue. *See Easley v. Kirmsee*, 382 F.3d 693, 700 n.5 (7th Cir. 2004).

Although not characterized as such by the Plaintiffs, their apparent failure to anticipate that they might incur significant additional damages between the end of trial and the issuance of the Court's decision is attributable to mistake, inadvertence, or "excusable neglect," under Rule 60(b)(1). The Plaintiffs' post-trial brief requested the out-of pocket premium payment damages noting that the total "through trial" was $73,436.63. (Pls.' Post-

Trial Br. 16.) In requesting attorneys' fees and costs, the Plaintiffs stated that the figures they presented were current through the start of trial, but did not include the trial or subsequent briefing fees and costs. (*Id*.) In other words, the Plaintiffs made an explicit statement that the fees and costs figures were incomplete but they did not make a similar explicit statement regarding the out-of-pocket premium damages. The Plaintiffs, as a result of a mistake, inadvertence, or excusable neglect, failed to expressly state that future premium costs – those incurred while they were awaiting the Court's decision – might accrue and failed to reserve the right to supplement the record to include them as a part of the damages award.

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), states that the standard for "excusable neglect" is:

> at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (citation omitted). Applying this standard to the instant action, the Court notes that the error was within the Plaintiffs' reasonable control, though its extent was affected by a factor out of their control – the timing of the Court's decision. There is no indication that the Plaintiffs' failure to act was not in good faith. The Defendants' mere assertion that trial strategy accounts for the failure to make the request is not persuasive. Allowing the Plaintiffs to update their damage evidence will not result in prejudice – the Defendants have access to the records and exact figures of the Plaintiffs' premium payments. The parties could not

6

control when the Court would issue its decision. Once the Plaintiffs received the Court's decision, their error became obvious and they acted promptly by filing their motion to increase the damage award. Any impact that the delay has on judicial proceedings is tempered by consideration of the time that the parties waited for the Court's decision. Having considered the equities of the situation, the Court grants the Plaintiffs' motion to the extent that, pursuant to Rule 60(b)(1), the judgment is re-opened to allow the Plaintiffs to submit additional evidence of their damages due to post-trial premium payments. *See Buggs*, 852 F.2d at 322; *see also In re: Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209-10 (D.C. Cir. 2003).

The Plaintiffs have proffered additional damage evidence by the affidavits of Paul R. Hoelfe ("Hoelfe") and Michael L. Laufenberg ("Laufenberg"). Hoefle avers based on his personal knowledge, certain listed amounts are premium payments made by the Plaintiffs so that they would not lose their health insurance coverage. (Hoefle Aff. ¶ 2.) He further avers that his affidavit at Tab 1 is a true and correct copy of the summary of premium payments prepared by plaintiff Larry Holzmiller ("Holzmiller"). (*Id.* at ¶ 4.) The referenced attachment is a handwritten sheet with the names of employee plaintiffs, followed by figures listed under the captions: "damages awarded," "paid after trial," and "total." (*Id.* & Attach.) A sentence at the bottom of the page reads: "Paul these are the amounts that every one [sic] says they have paid." *Id.* A signature "Larry Holzmiller" follows. *Id.* Holzmiller's unsworn list is inadmissable hearsay evidence. *See* Fed. R. Evid. 801; Fed. R. Evid. 802. The Defendants properly object to the form of the evidence.

7

In his affidavit, based on personal knowledge, Laufenberg avers that he has attached a letter from plaintiff James L. Mantz ("Mantz") listing the "health and dental insurance premiums" which the Mantzes were required to pay after the Defendants cancelled the Mantzes' insurance. (Laufenberg Aff. ¶ 2.) Mantz's letter is unsworn. Based on that letter, Laufenberg avers that "the total paid by the Mantzes since the February 2004 trial is $2,470.23 ($61.50 x 10) + $752.70 + $564.53 (through August 2006) + $538 (dental expenses)."[2] While Laufenberg has personal knowledge of the Mantz letter, he lacks personal knowledge of payments made by the Mantzes. The Defendants properly object to the form of this evidence.

To recover any additional damages for the premiums paid between the date of the trial and the August 17, 2006, issuance of the Decision and Order, the Plaintiffs will need to supplement the record. If the parties are able to reach an agreement, the parties may file a stipulation and proposed order for a second amended judgment. If the parties are unable to reach an accord, they shall file a written request for a hearing on additional premium damages which includes its estimated duration.

### *Motion for Sanctions*

The Plaintiffs seek imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure awarding them reasonable actual attorneys' fees for having to respond to the Defendants' argument that they are not required to reimburse the Plaintiffs for the

---

[2]Contrary to the Defendants' contention, Mantzes are not claiming damages prior to the trial date. (*See* Mot. to Increase Damage Award to Reflect Premium Payments Made Since Trial ¶ 4.) The Court questions the inclusion of $538 for "dental expenses." Dental expenses do not fall within the scope of the Plaintiffs' motion which requests an additional award of damages to reflect premium payments incurred from the close of the trial until the August 2006, issuance of the Court's decision.

8

insurance premiums which they paid at the Defendants' behest between the trial's conclusion and the Decision's issuance. The Defendants assert that their opposition is based on the record. Rule 11 imposes a duty on attorneys to ensure that any papers filed with the Court are well-grounded in fact, legally tenable, and not interposed for any improper purpose. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 392 (1990). The rule is principally designed to prevent baseless filings. *Id.* A court may impose Rule 11 sanctions for arguments "that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). A frivolous argument "is one that is 'baseless or made without a reasonable and competent inquiry.'" *Independent Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.*, 202 F.3d 965, 968-69 (7th Cir. 2000) (citations omitted).

The Defendants' assertion of a waiver in response to the Plaintiffs' motion to increase damages had both a legal and factual foundation. While the Defendants did not prevail on their argument, it was not frivolous. Therefore, the Plaintiffs' motion for sanctions is denied.

### *Motion for Attorneys' Fees and Costs*

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and Section 1132(g) of Title 29 of the United States Code, the Plaintiffs seek an award of attorneys' fees and taxable costs in the amounts of $73,396.00 and $6,881.55, respectively. Included with their motion is a bill of the costs which they incurred in bringing the action, (Mot. Attorneys'

9

Fees & Taxable Costs, 4-10). The Plaintiffs proffer the affidavits of their counsel in support of the fees request.

The Defendants oppose the amount of the requested attorneys' fees, asserting that a significant portion of the claimed hours relates to work that did not advance any legitimate claims in this action. Despite their total opposition, the Defendants raise only a few specific objections. The Defendants contest neither the award of costs nor the amount of costs sought by the Plaintiffs.

*Costs*

The Plaintiffs' unopposed bill of costs is granted. The Clerk of Court is directed to award taxable costs in the amount of $6,881.55 as set forth in the bill of costs.

*Attorneys' fees*

ERISA grants the district court discretion to award attorneys' fees to either party. *See* 29 U.S.C. § 1132(g)(1); *see also Senese v. Chi. Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001). The appeals court has noted that "[t]here is a 'modest presumption' in favor of awarding fees to the prevailing party, but that presumption may be rebutted." *Herman v. Cent. States, S.E. and S.W. Areas Pension Fund*, 423 F.3d 684, 695-96 (7th Cir. 2005) (citations omitted). Although the court of appeals for this circuit has "articulated two tests for analyzing the propriety of a fee request, *Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998), both formulas essentially ask the same question, i.e., 'was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?'" *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 593

10

(7th Cir. 2000) (citation omitted). *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 673 (7th Cir. 2004).

Under the first test, an award of fees to a successful party may be denied if the losing party's position was both "substantially justified – meaning something more than non-frivolous, but something less than meritorious – and taken in good faith, or if special circumstances make an award unjust." *Herman*, 423 F.3d at 696 (citations omitted). Under the second test, the Court considers five factors: (1) the degree of the offending party's culpability or bad faith; (2) the degree of the ability of the offending party to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Id*.

The Court will apply the second test. The Defendants did not honor their promise to pay the health insurance premiums of the retirees and their spouses until they became eligible for Medicare. There is no indication that the Defendants will be unable to personally satisfy the award of attorneys' fees. The award of attorneys' fees may deter other employers from reneging on similar promises to retirees. The action confers a significant benefit upon the retirees because private health insurance is very expensive. Furthermore, the Plaintiffs obtained the relief they sought in this action. Therefore, the Court will award attorneys' fees to the Plaintiffs.

In calculating an award of attorneys' fees, this Court begins by calculating the "lodestar;" that is, the product of the attorney's reasonable hourly rate and the number of hours

reasonably expended. *Stark*, 354 F.3d at 674 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Mathur v. Bd. of Tr. of S. Ill. Univ.*, 317 F.3d 738 (7th Cir.2003)). The lawyer's regular rate is strongly presumed to be the market rate for his or her services." *Moriarty ex rel. Local Union No. 727, I.B.T. Pension Trust, and the Teamsters Local Union No. 727 Health and Welfare Trust v. Svec,* 429 F.3d 710, 718 (7th Cir. 2005) (citations omitted.) "The burden of proving the market rate is on the applicant. *McNabola v. Chi. Transit Auth.*, 10 F.3d 501 (7th Cir. 1993); however, once the attorney provides evidence of the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded." *Stark*, 354 F.3d at 674-75.

Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id*. at 674. Further, the hours claimed can be reduced by the number of hours spent litigating claims on which the party did not succeed to the extent they were distinct from claims on which the party did succeed. *Id.*; *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544 (7th Cir. 1999).

As the Plaintiffs' counsel, the Laufenberg and Hoefle law firm charged an hourly rate of $190 for work done by Hoefle, a senior partner, and $175.00 for work done for Laufenberg, a younger partner. (Hoefle Aff. ¶ 3.) Although Hoefle's hourly rate increased substantially after May 30, 2002, the firm maintained the originally agreed upon hourly rate. (*Id*. at ¶ 4.) Attorney Tamara Hayes O'Brien ("O'Brien") avers that the hourly rates charged by the Plaintiffs' counsel are comparable to, and even below, those customarily charged in the Milwaukee, Wisconsin area for similar services provided by lawyers of comparable experience

12

and skill. (O'Brien Aff. ¶ 6.) The reasonableness of these hourly rates has not been rebutted. Therefore, they are approved.

With respect to hours expended, the Plaintiffs claim that 402.15 hours were spent by their attorneys on this case. The Defendants assert that the 12 to 12.25 hours which Plaintiffs' counsel spent seeking remand of the action to state court (about $2,000 in fees) should be excluded. The Plaintiffs contend that, because they brought state claims, it was reasonable to seek a remand to state court.

The Court has reviewed the motion to remand, the related submissions, and its Decision and Order denying that motion. The motion to remand for lack of subject matter was premised on the Defendants' answer denying that the plan was an ERISA plan and/or that they acted as a fiduciary, and the Defendants' affirmative assertion that the plan was an informal description of a group of special retirement benefits. (Decision and Order at 2-3 (Oct. 4, 2002).) The Court denied the remand motion, holding that the propriety of removal is determined as of the date of the removal and that because the Complaint included two ERISA claims (as alternatives to five causes of action under state law), and the Early Retirement Incentive Plan ("ERIP") appeared to be an ERISA plan, removal was proper. (*Id.* at 4-5.) Although the Plaintiffs did not prevail on their motion, it was properly brought since the motion reasonably questioned whether the Court had subject matter jurisdiction. The Court will allow the Plaintiffs to recover fees for their prosecution of that motion.

The Defendants also seek exclusion of time spent by the Plaintiffs' counsel in responding to the Defendants' motions to dismiss and for summary judgment totaling 92.75

13

hours – including 50 hours spent by Laufenburg and 30.75 hours spent by Hoefle. The Defendants suggest that too much time was expended on those responses by comparing the time spent on that task to the time devoted to trial preparation and trial – 108.25 hours. The Court is not persuaded by the Defendants' comparison. The Plaintiffs' preparation of their 54-page responsive brief and 33-page combined response to the Defendants' proposed findings of fact, their own proposed findings of fact, and disputed facts are of a different nature and are not comparable to trial preparation and trial. The Plaintiffs' written work in responding to the Defendants' comprehensive and extensive motion was excellent and meticulous. While the Plaintiffs did not prevail on their argument relative to the preemption of state law claims, their arguments were reasonable. However, in the exercise of its discretion, the Court will reduce by 20 percent (10 hours for Laufenburg and 7.5 hours for Hoefle) the time counsel spent briefing the Plaintiffs' state law claims that were dismissed by the Court's July 7, 2003, Decision and Order. *See Stark*, 354 F.3d at 674.

The Defendants also seek a 20 to 10 percent reduction (3.25 to 6.5 hours) for time spent in March 2004 by counsel in their initial and reply post-trial briefs arguing that an award of attorneys' fees and costs was appropriate prior to the Court's decision on the merits of the litigation. The Plaintiffs' initial and post-trial briefs succinctly addressed the evidence presented at trial about fees and costs, and the legal standards applicable to any such award. The Plaintiffs' submissions reflected an appropriate prosecution of their claims and were not excessive, redundant, or otherwise unnecessary. The Court sees no reason to disallow attorneys' fees for that work. *See id*.

14
Case 2:02-cv-00530-RTR   Filed 06/07/07   Page 14 of 16   Document 142

In sum, the Plaintiffs' motion for attorneys' fees and taxable costs is granted as follows. The Clerk of Court shall award to the Plaintiffs the entire amount ($6,881.55) claimed in their bill of costs. The Plaintiffs are awarded attorneys' fees for 384.65 hours (402.15 hours minus 17.5 hours) in the amount of $70,221.00 ($73,396.00 minus $3,175.00). The total reduction is based on $1,750.00 (10 times $175.00 per hour for Laufenburg) and $1425.00 (7.5 times $190 per hour for Hoefle) for time they spent defending the Plaintiffs' unsuccessful state law claims against the Defendants' motion to dismiss and for summary judgment.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Plaintiffs' motion for attorneys fees and taxable costs (Docket No. 124) is **GRANTED** to the extent that the Plaintiffs are awarded attorneys' fees in the amount of $70,221.00 and the Clerk of Court is directed to award $6,881.55 as sought by the Plaintiffs' bill of costs.

The Clerk of Court is **DIRECTED** to enter an amended judgment accordingly.

The Plaintiffs' motion to increase the damage award to reflect premium payments made since trial (Docket No. 123) is **GRANTED** to the extent that the judgment is re-opened to allow the Plaintiffs to submit additional evidence of their damages due to post-trial premium payments.

**No later than June 29, 2007**, the parties **SHALL** file a stipulation and proposed order for a second amended judgment as to the amount of additional damages due to premiums

paid from the date of trial until the date of the bench trial decision or, if they are unable to reach an accord, the parties **SHALL** file a written request for a hearing which includes its estimated duration.

The Plaintiffs' motion for sanctions (Docket No. 134) is **DENIED**.

Dated at Milwaukee, Wisconsin this 7th day of June, 2007.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**